IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARLA HAMMOND,

                Plaintiff,

    v.

CHESTER UPLAND SCHOOL DISTRICT, et al.,

                Defendants.

CIVIL ACTION
NO. 13-6209

**OPINION**

**Slomsky, J.**                                                                                    **September 9, 2014**

## I.     INTRODUCTION

Plaintiff Darla Hammond ("Plaintiff" or "Dr. Hammond") initiated this action against the Chester Upland School District, the Board of School Directors of Chester Upland School District (the "School Board"), Tony L. Watson, Acting Superintendent of the School District ("Defendant Watson"), Joe Watkins, Financial Receiver for the School District ("Defendant Watkins"), and various individual members of the school board.[1]  The School District, Defendant Watkins, and the School Board are collectively referred to as the "School District Defendants."  (Doc. No. 8 at ¶ 20.)  Defendants Watson, Watkins, and the individual members of the School Board are sued in both their individual and official capacities.  (Id. at ¶¶ 6-15.)  Plaintiff claims that she was improperly terminated as Principal of Chester High School without sufficient notice or due process of law.

---

[1]  The individual members of the School Board include Wanda Mann, Baltazar Rubio, Lakisha Blackwell, Virginia Pilkington, Anthony Johnson, Betty McClairen, Cephus Richardson, and Charlie L. Warren II.  (Doc. No. 8 at ¶¶ 8-16.)

Plaintiff alleges eight claims in her Amended Complaint.  The headings of each claim are worded as follows:  (1) Violation of Due Process, 42 U.S.C. § 1983, Deprivation of Property Interest: Indefinite Suspension, against all Defendants (Count One); (2) Violation of Due Process, 42 U.S.C. § 1983, Deprivation of Property Interest: De-Facto Termination, against all Defendants (Count Two)[2]; (3) Violation of Due Process, 42 U.S.C. § 1983, Deprivation of Liberty Interest, against all Defendants (Count Three); (4) Breach of Contract against all Defendants (Count Four); (5) Promissory Estoppel against all Defendants (Count Five); (6) Mandamus against all Defendants (Count Six); (7) Declaratory Judgment against all Defendants (Count Seven); and (8) Violation of Local Agency Law and Public School Code against the School District Defendants (Count Eight).  (Doc. No. 8.)

Defendants Chester Upland School District, the members of the School Board, and Acting Superintendent Tony Watson filed a Motion to Dismiss the Amended Complaint.  (Doc. No. 10.)  Defendant Watkins filed a separate Motion to Dismiss.  (Doc. No. 20.)  Plaintiff Responded to the first Motion to Dismiss (Doc. No. 24), but did not respond to Defendant Watkins' Motion.  The Motions are now ripe for disposition.[3]  For reasons that follow, both Defendants and Defendant Watkins' Motions will be granted in part and denied in part.

---

[2] Plaintiff separates her claim for violation of due process under 42 U.S.C. § 1983 into two alleged claims: De-Facto Termination (Count One) and Indefinite Suspension (Count Two). These alleged claims constitute the various elements of one due process claim, rather than separate claims.  The Court will therefore address Counts One and Two as one claim for a violation of due process.

[3] In considering the Motions, the Court has considered the Amended Complaint (Doc. No. 8), Defendants Chester Upland School District, et al.'s Motion to Dismiss (Doc. No. 10), Plaintiff's Response (Doc. No. 24), Defendants' Reply (Doc. No. 26), Defendant Joseph Watkins' Motion to Dismiss (Doc. No. 20), Plaintiff's Supplemental Response to Defendants' Motion to Dismiss (Doc. No. 27), and the argument of counsel at a hearing held on April 30, 2014.

## II.      BACKGROUND

The following facts are alleged in the Amended Complaint and must be considered as true when deciding a Motion to Dismiss.  Plaintiff began working for the Chester Upland School District in 2003 as an Academy Director/Vice Principal with Edison Partnership under the direction of Superintendent Dr. Dexter Davis.  (Doc. No. 8 at ¶ 25.)  In 2005, Plaintiff was appointed Acting Principal of Chester High School, replacing Principal Dr. Eboni Wilson, who was terminated.  (Id. at ¶ 26.)  From 2006 to 2007, Plaintiff was Principal of Wetherill Middle School under Superintendent Dr. Gloria Grantham.  (Id. at ¶ 27.)  From 2007 to 2008, Plaintiff was Vice Principal of Chester High School, under Principal Robert Crawford.  (Id. at ¶ 28.)

As Vice Principal of Chester High School, Plaintiff's duties included overseeing the administration of the Pennsylvania System of State Assessment ("PSSA").  (Id. at ¶ 29.)  The PSSA is a standardized test given to students in several grades, including the eleventh grade. The test assesses certain language and mathematics skills.  (Doc. No. 7-1 at 2.)  Instructions for administering the test are given to the Principal and/or the Central Division of Chester High School by the Superintendent.  (Doc. No. 8 at ¶ 30.)  These instructions include how to administer the test and which students to select for testing.  (Id.)  According to Plaintiff, these instructions stated that only "true" eleventh graders should be tested—meaning that students who had taken the PSSA should not be re-tested.  (Id. at ¶¶ 30-31.)  Since 2003, when Plaintiff began her tenure with Chester High School, it was common practice to test only those students who had never taken the PSSA before.  (Id. at ¶ 31.)

In 2010, Plaintiff was appointed Acting Principal of Chester High School under Superintendent Gregory Thornton.  (Id. at ¶ 32.)  Her contract was automatically renewed each year.  (Id. at ¶ 27.)  Plaintiff's contract for employment ("Employment Contract") stated:

> It is agreed by and between Darla Hammond, Professional
> Employee, and . . . the School District of Chester-Upland
> Pennsylvania, that said professional employee shall, under the
> authority of said board and its successors, and subject to the
> supervision and authority of the properly authorized superintendent
> of schools or Supervising Principal, serve as a Principal in the
> school district . . . This contract is subject to the provisions of the
> "Public School Code of 1949" and the amendments thereto AND
> IT IS FURTHER AGREED by the parties that . . . this contract
> shall continue in force year after year unless terminated by the
> Education Empowerment Board by official written notice
> presented to the professional employee:  Provided, That [sic] said
> notice shall designate the cause for termination and shall state that
> an opportunity to be heard if the said professional employee,
> within ten (10) days after receipt of the termination notice, presents
> a written request for such hearing.

(Id. at ¶ 34.)  Defendants do not contest that the Public School Code of 1949 ("Public School Code") applies to the Employment Contract.

From 2010 to 2012, Plaintiff served as Principal of Chester High School under Superintendent Gregory Thornton and Acting Superintendent Dr. Joyce Wells.[4]  (Id. at ¶ 36.)  On January 17, 2012, the Chester Upland School District hired Tony Watson as Acting Superintendent.  (Id. at ¶ 37.)  From January 2012 through March 2012, Plaintiff served as Principal under Acting Superintendent Watson.  (Id. at ¶ 38.)

On March 8, 2012, Acting Superintendent Watson stopped Plaintiff in the hallway of Chester High School.  (Id. at ¶ 44.)  During a brief walk to Plaintiff's office, Defendant Watson asked Plaintiff questions about Chester High School procedures with respect to PSSA testing. (Id.)  Plaintiff told him that only "true" eleventh grade students were tested.  (Id.)  Following this conversation, Defendant Watson did not give Plaintiff any instructions or directives regarding

---

[4] In the Amended Complaint, Plaintiff states that she became Acting Principal of Chester High School in 2010.  (Doc. No. 8 at ¶ 32.)  Plaintiff then states that she was Principal of Chester High School from 2010 to 2012.  (Id. at ¶ 36.)  It is therefore unclear when Plaintiff's position changed from Acting Principal to Principal of Chester High School during this time period.

PSSA testing, either verbally or in writing.  (Id.)  Defendant Watson also did not notify Plaintiff of any charges against her, either orally or in writing.  (Id.)

On March 15, 2012, Defendant Watson told Plaintiff to come to his office immediately to attend a meeting.  (Id. at ¶ 47.)  He did not tell her the purpose of the meeting.  (Id.)  Plaintiff went to Defendant Watson's office where she found Defendant Watson and Attorney Leo Hackett, a representative of Chester Upland School District.  (Id. at ¶ 48.)  During the meeting, Defendant Watson indicated that there were discrepancies between eleventh grade enrollment and the number of students scheduled to take the PSSA.  (Id. at ¶ 49.)  Plaintiff responded that she had no authority to make a change of that nature, so the information Defendant Watson received must have been inaccurate.  (Id. at ¶ 50.)  Defendant Watson then inquired about certain trends from the last several years that were the result of an investigation he had been conducting for at least one week.  (Id.)  Plaintiff could not respond to Defendant Watson's request for documentation because she did not have sufficient notice of the meeting or time to gather or consult notes, memos, or other documentation.  (Id.)

After this March 15, 2012 meeting, Defendant Watson did not provide Plaintiff with any instructions, written or verbal, regarding PSSA testing.  (Id. at 54.)  In fact, Defendant Watson never instructed Plaintiff to cease or remedy any alleged professional negligence with respect to the PSSA.  (Id. at ¶ 55.)  Plaintiff never received any write-ups for violations related to the PSSA while she was Principal or Assistant Principal of Chester High School.  (Id. at ¶ 57.)  On the contrary, Plaintiff had always received good evaluations as both Assistant Principal and Principal.  (Id. at 56.)

On March 19, 2012, Defendant Watson called Plaintiff to his office and handed her a letter stating that she was suspended without pay, effective March 20, 2012 (the "Suspension

Letter").  (<u>Id.</u> at ¶ 63; <u>Id.</u> at Ex. A.)  The Suspension Letter did not state a reason for the

suspension.  (<u>Id.</u>)  The Suspension Letter stated:

> On March 19, 2012, an Administrative Hearing was held to discuss the allegation(s) regarding your performance and behavior as Principal in the Chester Upland School District.  As a result of the above Administrative Hearing, I have determined that you are hereby suspended as an employee of the School District without pay beginning March 20, 2012.
>
> You are not to respond to any questions or concerns in the capacity of a Chester Upland School District employee during the time of suspension.  In addition, you are not to be on school property or attend school related activities in the role of high school principal.  However, you are permitted to attend any and all activities as any other citizen may decide.
>
> This action may not be the final disciplinary action.  After my further review of the circumstances related to your employment it is possible that I will impose and/or recommend additional employment related action(s).
>
> Please provide to my office today any keys, materials and equipment of the Chester Upland School District.

(<u>Id.</u> at Ex. A.)  The Suspension Letter falsely stated that an Administrative Hearing had been held

on March 19, 2012.  (<u>Id.</u> at ¶ 65.)  Defendant Watson admits that he had made the decision to

suspend Plaintiff prior to March 19, 2012, and that he drafted and signed the Suspension Letter

prior to that date.  (<u>Id.</u> at ¶¶ 66-67.)

On March 25, 2012, Plaintiff filed for unemployment benefits and was approved on June

7, 2012.  (<u>Id.</u> at ¶ 82.)  On April 2, 2012, Plaintiff sent a letter to Defendant Watson, through her

attorney, inquiring as to why she was suspended and putting Defendants on notice that they had

violated her due process rights.  (<u>Id.</u> at ¶ 84; <u>Id.</u> at Ex. B.)  On April 9, 2012, Mr. Hackett,

attorney for the School District, replied that Plaintiff was suspended for the unauthorized

movement of students before PSSA testing.  (Id. at ¶ 86.)  This was the first time Plaintiff had been notified of the reason for her suspension.  (Id.)

On May 21, 2012, the Chester School District sent out a mass email advertising that the position of Principal of Chester High School was open and candidates should apply.  (Id. at ¶ 88.)  At a meeting held in May 2012, Defendant Watson indicated that Plaintiff would not be reinstated as Principal.  (Id. at ¶ 89.)  Also at that meeting, Defendants offered Plaintiff a teaching position, which Plaintiff immediately rejected.  (Id.)  That meeting was attended by Plaintiff, James Lee, Esquire, Plaintiff's counsel, Mr. Hackett, attorney for the School District, and an unknown individual.  (Id.)

On or about June 2012, Defendants threatened to report Plaintiff to the Professional Standards and Practices Commission if Plaintiff did not voluntarily end her employment with the School District by July 6, 2012.  (Id. at ¶ 90.)  Plaintiff refused to do so, and the Amended Complaint alleges that Defendants then communicated false allegations of professional misconduct by Plaintiff to the Pennsylvania Department of Education.  (Id. at ¶ 91.)

Although the School Board held monthly meetings between March 2012 and July 2012, Defendants did not offer Plaintiff a hearing on her suspension until August 13, 2012, over five months after her suspension began.  (Id. at 92-93.)  On August 10, 2012, Mr. Hackett sent a letter to Plaintiff's counsel informing Plaintiff and her counsel that the School District would be holding a hearing on Plaintiff's suspension on August 15, 2012.  (Id., Ex. C.)  The hearing notice stated:

> Hearing Date:  August 15, 2012 at 5:00 PM
>
> The District is offering a hearing to your client, Dr. Darla Hammond, related to her continued suspension without pay.  At such a hearing the Superintendent would present the reasons(s) [sic] for the suspension.  You would have the opportunity to

7

> question him related to the recommendation and present evidence
> on behalf of your client.  You can waive this hearing.

(Id. at ¶ 101; Id. at Ex. C.)  Plaintiff received this notice on August 13, 2012, and had only one day to prepare for the hearing.  (Id. at ¶ 102.)

At the hearing, the School Board did not take a vote on Plaintiff's dismissal.  (Id. at ¶¶ 76-77, 118-19.)  Because Plaintiff had returned her keys to Defendants when she was first suspended, she did not have access to her records or files which she needed to support her defense.  (Id. at ¶ 112.)

On December 13, 2012, Defendant Watkins was appointed Financial Receiver for the School District.  As Financial Receiver, Defendant Watkins assumed the duties and responsibilities of the School Board under the Public School Code.  (Id. at ¶ 7.)  On January 16, 2014, well over one year after Plaintiff's hearing before the School Board, Defendant Watkins, as Financial Receiver in charge of the School Board, passed a resolution affirming Plaintiff's suspension.[5]  (Id. at ¶ 201.)  This resolution was passed almost two years after Plaintiff's initial suspension was imposed.  (Id.)

As of April 30, 2014, the date of Plaintiff's Response to Defendants' Motion to Dismiss, Plaintiff has not been reinstated to her position as Principal and continues to be suspended without pay.  (Doc. No. 24.)

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of

---

[5]  In the Amended Complaint, Plaintiff alleges that Defendant Watkins, as Financial Receiver, "passed" the resolution affirming Plaintiff's suspension.  The word "passed" appears misused in relation to an action of Defendant Watkins as an individual appointed as Financial Receiver. Although Defendant Watkins, as Financial Receiver in charge of the School Board, stands in its shoes and his actions would constitute actions of the School Board, it appears that the word "passed" should be replaced with the word "issued."

the elements of a cause of action, supported by mere conclusory statements do not suffice" to

defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550

U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A.

France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals

Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third

Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part

analysis that a district court in this Circuit must conduct in evaluating whether allegations in a

complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a
> claim."  Second, the court should identify allegations that, "because they are no
> more than conclusions, are not entitled to the assumption of truth."  Finally,
> "where there are well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an entitlement for
> relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken

into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike

conclusory allegations, and then (3) looking at the well-pleaded components of the complaint

and evaluating whether all of the elements identified in part one of the inquiry are sufficiently

alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show"

such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at

679.  The "plausibility" determination is a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."  Id.

## IV.   ANALYSIS

### A. Plaintiff's Claims for Violation of Due Process, 42 U.S.C. § 1983, Deprivation of Property Interest (Counts One and Two) Will Not Be Dismissed[6]

To state a procedural due process claim, a plaintiff must allege that "'(1) [s]he was

deprived of an individual interest that is encompassed within the Fourteenth Amendment's

protection of life, liberty, or property, and (2) the procedures available to [her] did not provide

due process of law.'"  Iles v. de Jongh, 638 F.3d 169, 173 (3d Cir. 2011) (quoting Biliski v. Red

Clay Consol. School Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009)).  "The question of

whether an employee has a property right in continued employment is a question of state [or

territorial] law."  Id. (quoting McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995)).  Plaintiff's

Employment Contract incorporates the Public School Code, which "confers a property interest to

management employees, as their termination must be for cause."[7]  Mosley v. City of Pittsburgh

Pub. Sch. Dist., 702 F. Supp. 2d 561, 572 (W.D. Pa. 2010).  Therefore, the issue before the Court

is whether Plaintiff was deprived of this property interest, and, if so, whether the process

afforded her met the Fourteenth Amendment standard.

In Cleveland Bd. of Educ. v. Loudermill, the Supreme Court held that a public employee

with a property interest in his or her job is entitled to a "pre[-]termination opportunity to respond,

coupled with post-termination administrative procedures."  470 U.S. 532, 547-48 (1985).

---

[6] As noted, Plaintiff separates her claim for violation of due process under 42 U.S.C. § 1983 into two claims (Counts One and Two), which the Court will address as one claim for a violation of due process.

[7] Defendants do not contest that Plaintiff had a constitutionally protected property interest in her job as Principal of Chester High School.  (Doc. No. 10 at 10.)

Specifically, "a tenured public employee is entitled to [pre-termination process consisting of] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546. "The pre-termination hearing may be informal so long as it affords the employee an opportunity to make any 'plausible arguments that might . . . prevent [the] discharge.'" Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 79 (3d Cir. 1989) (quoting Loudermill, 470 U.S. at 544). Notice is sufficient "1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case." Gniotek v. City of Phila., 808 F.2d 241 (3d Cir. 1986). Accordingly, "[o]nly in 'extraordinary situations where some valid government interest is at stake' is it permissible to postpone the hearing until after the deprivation has already occurred." Schmidt v. Creedon, 639 F.3d 587, 597 (3d Cir. 2011). Furthermore, the fact that adequate post-deprivation union grievance procedures were held does not render a noticed pre-deprivation hearing unnecessary. Schmidt, 639 F.3d at 597; see also Cotnoir v. Univ. of Me. Sys., 35 F.3d 6, 12 (1st Cir. 1994) (hearing required prior to termination of employee, even where post-termination union grievance procedures were available).

First, Plaintiff's indefinite suspension without pay is tantamount to termination. As the court noted in Hopkins v. Mayor & Council of Wilmington:

> The distinctions between suspension and termination are blurred, however, where imposition of the former is for an indefinite period culminating in an assessment of whether termination is in order. Indeed, when suspension deprives one of all the benefits of employment, subject to restitution only if the decision was erroneous, the impact on the individual is essentially indistinguishable from the effect of a decision to terminate an employee subject to reinstatement with back pay upon reversal of that decision. See Thurston v. Dekle, 531 F.2d 1264, 1272 (5th Cir. 1976), vacated on other grounds, 438 U.S. 901, 98 S. Ct. 3118, 57 L.Ed.2d 1144 (1978). In such instances, the loss of salary for an unknown time period hinders the ability to pursue post-

> deprivation remedies.  Moreover, a suspension which may end in severance leaves the employee uncertain as to whether alternative employment should be sought.  For these reasons, it is not surprising that developing case law provides some protection against the risk of an erroneous suspension.

600 F. Supp. 542, 547 (D. Del. 1984).  In determining whether due process is warranted, courts must take into account "the length and finality of the deprivation."  Gilbert v. Homar, 520 U.S. 924, 932 (1997).

As of the date of the Amended Complaint, Plaintiff had been suspended for six hundred and seventy-nine days without pay—almost two years.  While the Suspension Letter did not indicate that Plaintiff would be terminated, Defendant Watson stated at the May 2012 meeting that Plaintiff would not be reinstated as Principal.  (Doc. No. 8 at ¶ 89.)  This coupled with the extensive period of time Plaintiff remained suspended constituted de facto termination.

Because Plaintiff's suspension constitutes de facto termination, Plaintiff was entitled to a pre-termination hearing under Loudermill.  While this hearing can be informal, it must consist of oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity for the employee to present her side of the story.  Here, Plaintiff was denied an adequate pre-termination hearing that met these criteria.  None of the three encounters that took place between Plaintiff and Defendant Watson provided her with notice of the charges against her.  While she was told about discrepancies between eleventh grade enrollment and the number of students taking the PSSA at the March 15, 2012 meeting, she was not told that she was being investigated or charged in connection with those discrepancies.  The Suspension Letter did not inform Plaintiff why she was being suspended, nor did Defendant Watson provide this information when he handed her the Letter.  Because she was not informed about the potential charges, Plaintiff was unable to adequately respond to them prior to her

suspension.  Moreover, Defendant Watson admits that he made the decision to suspend Plaintiff prior to March 19, 2012 when he gave her the Suspension Letter, and that he drafted and signed the Letter prior to that date.  (Doc. No. 8 at ¶¶ 66-67.)  Accordingly, Plaintiff was not provided with an adequate pre-termination hearing prior to her de facto termination.

Further, the August 15, 2012 hearing did not constitute an adequate post-deprivation hearing sufficient to cure Plaintiff's denial of due process.  When a pre-termination hearing is not practical, a post-termination proceeding will suffice.  Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 224 (3d Cir. 2009).  The Public School Code requires that an employee be furnished with "a detailed written statement of the charges upon which his or her proposed dismissal is based" prior to a hearing, and that such hearing "shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice."  24 P.S. § 11-1127.  A professional employee, such as Plaintiff, may not be dismissed prior to written notice from the school district designating cause for termination of the contract.  Bruckner v. Lancaster Cnty. Area Vocational-Technical Joint School Operating Committee, 467 A.2d 432, 434-35 (Pa. Commw. Ct. 1983).

Here, the notice that Plaintiff received regarding the post-deprivation hearing was insufficient.  The notice did not state the reason for her suspension and/or termination, but rather stated that the Superintendent would present the reasons at the hearing.  Plaintiff received this notice on August 13, 2012, and only had one day to prepare for the hearing, in violation of the Public School Code requirement that the hearing be held between ten to fifteen days after written notice is provided.  (Doc. No. 8. at ¶ 102.)  Thus, the notice violated the Public School Code by not reciting the reason for Plaintiff's suspension, and for setting the hearing less than ten days from the date of the notice.

Since none of the encounters between Defendant Watson and Plaintiff constituted a valid pre-termination hearing, Plaintiff did not receive notice or a pre-termination hearing prior to termination.  Moreover, because of the unreasonable delay in holding a post-deprivation hearing and deficient notice of this hearing, the August 15, 2012 hearing did not cure Plaintiff's violation of due process or constitute an adequate post-termination hearing.  As a result, the allegations in the Complaint sufficiently show that Plaintiff's procedural due process rights were violated and permit this claim to go forward.[8]

## B.  Plaintiff's Stigma-Plus Claim (Count Three) Will Be Dismissed

Next, Plaintiff alleges a due process claim for deprivation of a liberty interest in her reputation.  "[R]eputation alone is not an interest protected by the Due Process Clause. . . . Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest."  Dee v. Borough of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008) (citations omitted).  This has been referred to as the "stigma-plus" test.

"[T]o satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements 1) were made publically, and 2) were false."  Id.; see also Good v. City of Sunbury, 352 Fed. Appx. 688, 690 (3d Cir. 2009).  In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a

---

[8] Defendants also argue that Plaintiff's § 1983 claim should be barred for her failure to follow the procedures available under Pennsylvania law to challenge her allegedly unlawful suspension. (Doc. No. 10-1 at 13.)  However, this argument fails because "federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."  James v. Richman, 547 F.3d 214, 217 (3d Cir. 2008) (citing Monroe v. Pape, 365 U.S. 167, 183 (1961)).  This is especially true where the federal right is not "entangled in a skein of state law that must be untangled before the federal case can proceed."  McNeese v. Board of Ed. For Community Unit School Dist. 187, 373 U.S. 668, 673-74 (1963).  Therefore, Plaintiff may pursue a federal constitutional violation under 42 U.S.C. § 1983 regardless of whether a parallel state remedy is available as well.

false and defamatory impression about the employee in connection with his termination," then it deprives the employee of a protected liberty interest. Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006).  However, when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty, or malfeasance, no liberty interest is implicated. Mercer v. City of Cedar Rapids, 308 F.3d 840, 845 (8th Cir. 2002).  Rather, "[c]harges that carry the stigma of moral turpitude," or "impugn one's honor or integrity," give rise to due process protection. Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991); Fox v. Cheltenham Twp. Auth., No. 12-716, 2012 WL 2273424, at *5 (E.D. Pa. June 18, 2012).

When such a deprivation occurs, the appropriate remedy is a name-clearing hearing. Id. Such a hearing would afford the plaintiff an opportunity to "hear and answer first-hand any stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation." Patterson v. City of Utica, 370 F.3d 322, 335 (2d Cir. 2004).

Here, Plaintiff does not provide any details about the false statements that Defendant Watson made to the Pennsylvania Department of Education.  The Amended Complaint simply states:

> Defendant, pursuant to Plaintiff's suspension/termination and because Plaintiff refused to resign, communicated false allegations of professional misconduct to the Pennsylvania Department of Education.

(Doc. No. 8 at ¶ 219.)  While the Court could assume that the "false allegations of professional misconduct" relate to the accusations made against Plaintiff regarding the PSSA, the Amended Complaint does not describe the false accusations.  Without more specificity, Plaintiff's stigma-plus claim lacks factual content that allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged.  The principles of Iqbal and Twombly simply

require more factual specificity as to what are the false allegations.  Accordingly, the Court

must dismiss the stigma-plus claim against all Defendants.[9]

### C.  Plaintiff's Claim for Breach of Contract (Count Four) Will Be Dismissed

Plaintiff alleges that Defendants breached her Employment Agreement by denying her

due process when they suspended her indefinitely.  To plead a claim for breach of contract, a

plaintiff must allege: (1) the existence of a valid and binding contract; (2) the contract's essential

terms; (3) that she complied with the contract's terms; (4) that the defendant breached a duty

imposed by the contract; and (5) damages resulting from the breach.  Coreia v. Schuylkill Cnty.

Area Vocational-Technical Sch. Auth., No. 04-2425, 2005 WL 2266589, at *11 (M.D. Pa. Sept.

16, 2005) (citations omitted).

The parties do not dispute that the Employment Contract constitutes a contract or that it

refers to the provisions of the Public School Code.  Under Pennsylvania law, "where one contract

refers to and incorporates the provisions of another, both must be construed together."  Volunteer

Firemen's Ins. Servs., Inc. v. Fuller, No. 12-2016, 2012 WL 6681802, at *7 (M.D. Pa. Dec. 21,

2012).  The Public School Code will therefore be construed together with the Employment

Contract.

The Employment Contract provides that termination must be done by the Education

Empowerment Board through an official written notice presented to the employee.  The notice

must give the reason for the termination and state that a hearing, if requested by the employee,

will be held within ten days of the notice.  Likewise, the Public School Code, which is

incorporated into the Employment Contract, provides for a public hearing when an employee is

terminated, along with written notice detailing the reasons for termination.  24 P.S. § 11-1126-

---

[9] The Court will allow Plaintiff to amend her Complaint if, after review of this Opinion, she
determines that she can present facts which would support a plausible stigma-plus claim.

1127.  The hearing must then be held between ten to fifteen days after notice is received.  Id.

After the hearing, the Board must vote on termination.  24 P.S. § 11-1129.  If the employee is

discharged, then he or she must receive written notice of the discharge via registered mail.  Id.

       It is apparent from the allegations in the Complaint that Defendants did not comply with

the procedures required under either the Employment Contract or the Public School Code when

they suspended Plaintiff indefinitely without pay.  Plaintiff was not told the reason for her

suspension in violation of both the Employment Contract and the Public School Code.  Neither

the Suspension Letter nor the notice Plaintiff received regarding the August 15, 2011 hearing

contained the reasons for her termination or suspension.  Rather, the Suspension Letter stated

that "allegation(s) regarding [Plaintiff's] performance and behavior as a Principal in the Chester

Upland School District" had been made, and the notice stated that the reasons would be given at

the hearing.  Thus, Defendants breached Plaintiff's Employment Contract and the Public School

Code by failing to follow the proper protocol for her suspension.

       However, the remedy for appealing an unlawful termination or suspension is provided in

the Public School Code.  Section 11-1131 of the Public School Code provides that when a

professional employee considers him or herself aggrieved by an action of the School Board, an

appeal must be taken to the Commonwealth of Pennsylvania's Secretary of Education within

thirty days of receipt of the written notice of the decision of the Board.  24 P.S. § 11-1131. The

Secretary of Education must then schedule a hearing between ten and thirty days later, and give

written notice to all interested parties.  Id.  After the hearing, the Secretary of Education must

enter an order either affirming or reversing the action of the School Board.  Id.  The employee

may then appeal the decision of the Secretary of Education to the Court of Common Pleas

pursuant to Pennsylvania's Local Agency Administrative Agency Law.  Id. § 11-1132.

17

Remedies must be pursued under the statutory procedure provided in the Public School Code before an action alleging state violations may be filed in court.  In Jackson v. Centennial School District, the plaintiff attempted to circumvent the statutory procedure by abandoning the appeal process and filing an action in the Court of Common Pleas.  501 A.2d 218, 220 (Pa. 1985).  The court held that such circumvention was impermissible.

Here, Plaintiff was suspended effective March 20, 2012.  On August 15, 2012, a hearing was held on her suspension before the School Board.  On January 16, 2014, Defendant Watkins, the Financial Receiver of the School District, passed a resolution affirming Plaintiff's suspension.  Pursuant to Section 11-1131 of the Public School Code, Plaintiff should have appealed this resolution to the Secretary of Education within thirty days of its receipt.  24 P.S. § 11-1131.  Plaintiff could have then appealed the decision of the Secretary of Education to the Pennsylvania Court of Common Pleas if she did not agree with that decision.  Because Plaintiff failed to exhaust the remedies available to her under the Public School Code, this Court does not have jurisdiction to consider her breach of contract claim.

For the above reasons, Plaintiff's claim for breach of contract will be dismissed.

**D. Plaintiff's Claim for Promissory Estoppel Against All Defendants (Count Five) Will Be Dismissed**

Plaintiff alleges a promissory estoppel claim against all Defendants as an alternative to her breach of contract claim.  (Doc. No. 24 at 30.)  Courts have held that breach of contract and promissory estoppel may be pled in the alternative, but that if the court finds that a contract exists, then the promissory estoppel claim must fail.  Iversen Baking Co., Inc. v. Weston Foods, Ltd., 874 F. Supp. 96, 102 (E.D. Pa. 1995) (collecting cases).  Because the parties have agreed

and the Court finds that the Employment Contract constitutes a valid contract between the parties, Plaintiff's claim for promissory estoppel will be dismissed.[10]

### E.   Plaintiff's Claim for Mandamus Against All Defendants (Count Six) Will Be Dismissed

Plaintiff alleges a claim for mandamus declaring her indefinite suspension and/or termination void, directing the removal of the new administrator and reinstating her employment, and awarding her compensatory and economic damages.  (Doc. No. 8 at ¶¶ 244-55.)  "A mandamus action lies only 'to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other adequate and appropriate remedy at law . . . .'"  Kohn v. Sch. Dist. of Harrisburg, 817 F. Supp. 2d 487, 510 (M.D. Pa. 2011).  Mandamus cannot be used "'to compel the performance of a particular discretionary act, [but] it is available to direct that discretion be exercised.'"  Crozer Chester Med. Ctr. v. Dep't of Labor & Indus., 22 A.3d 189, 193 (Pa. 2011) (quoting Del. River Port Auth. v. Thornburgh, 493 A.2d 1351, 1355-56 (Pa. 1985)).

As noted, Plaintiff has adequate remedies at law to appeal her unlawful termination.  The Public School Code provides an appeals process to the Secretary of Education before an action can be filed in state court.  24 P.S. § 11-1132.  In Merritt v. West Mifflin Area School District, the Commonwealth Court held that when a professional employee fails to pursue the statutory remedy of appeal with the Secretary of Education within thirty days of receipt of a notice of dismissal, the court does not have jurisdiction to consider that employee's petition for mandamus

---

[10] Defendants argue that the School Board, School District, Superintendent, and School Board members should be immune from the promissory estoppel claim to the extent it seeks monetary damages under the provisions of Pennsylvania's Political Subdivision Tort Claims Act ("Tort Claims Act") and the immunity afforded to High Public Officials.  (Doc. No. 10 at 39.)  Because the Court is dismissing the promissory estoppel claim for the reason noted, the Court need not address this argument.

to compel the school district to hold a hearing on the dismissal.  424 A.2d 572, 573-74 (Pa. Commw. Ct. 1981).  Likewise, in <u>Gooley v. Board of Public Education for School District of Pittsburgh</u>, the Commonwealth Court held that a professional employee cannot challenge the non-renewal of her teaching contract in state court through a mandamus claim.  399 A.2d 148, 149-50 (Pa. Commw. Ct. 1979); <u>see</u> <u>also</u> <u>Jackson v. Centennial Sch. Dist.</u>, 501 A.2d 218, 219-20 (Pa. 1985) (employee precluded from making collateral attack on unappealed decision of Secretary of Education under doctrines of primary jurisdiction and exhaustion of administrative remedies).

Again, Plaintiff was suspended effective March 20, 2012.  On August 15, 2012, a hearing was held on her suspension before the School Board.  On January 16, 2014, Defendant Watkins, the Financial Receiver of the School District, passed a resolution affirming Plaintiff's suspension.  Pursuant to Section 11-1131 of the Public School Code, Plaintiff should have appealed this resolution to the Secretary of Education within thirty days of its receipt.  24 P.S. § 11-1131.  Plaintiff next had the option to appeal the decision of the Secretary of Education to the Pennsylvania Court of Common Pleas if she did not agree with that decision.  Because Plaintiff failed to exhaust the remedies available to her under the Public School Code, this Court does not have jurisdiction to consider her mandamus claim.[11]

---

[11] Defendants again argue that the School Board, School District, Superintendent, and School Board members should be immune from the mandamus claim to the extent it seeks monetary damages under the Tort Claims Act.  (Doc. No. 10 at 39.)  Defendants also argue that the Superintendent and School Board members should be immune because they have High Public Official immunity from the mandamus claim.  (<u>Id.</u>) Because the Court is dismissing the mandamus claim, it need not address these arguments.

**F.   Federal Declaratory Judgment Claim Against All Defendants (Count Seven) Will Not Be Dismissed**

Plaintiff seeks a declaratory judgment (1) that her indefinite suspension and/or termination is void; (2) the removal of her replacement; (3) and for her reinstatement, along with compensatory and economic damages.  (Doc. No. 8 at ¶¶ 256-61).  It is unclear whether this count is brought pursuant to the Pennsylvania Declaratory Judgment Act, 42 Pa. C.S.A. § 7532, or the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  Assuming Plaintiff intended to pursue both statutes as avenues for relief, Plaintiff's claim for declaratory judgment under the Pennsylvania Declaratory Judgment Act is dismissed.  However, Plaintiff's claim under the Federal Declaratory Judgment Act will not be dismissed.

The Pennsylvania Declaratory Judgment Act confers power on "courts of record, within their respective jurisdictions . . . to declare rights, status, and other legal relations whether or not further relief is or could be claimed."  42 Pa. C.S.A. § 7532.  The Act further clarifies that rendering declaratory relief "shall be additional and cumulative to all other available remedies except as provided in subsection (c)."  Id. § 7541(b).  Subsection (c) states that "relief shall not be available . . . with respect to any . . . [p]roceeding within the exclusive jurisdiction of a tribunal other than a court."  Id. § 7541(c).

The Pennsylvania Supreme Court in Commonwealth of Pennsylvania Department of General Services v. Frank Briscoe Co. examined whether plaintiff's request for declaratory judgment was appropriate where an administrative procedure was in place to resolve plaintiff's claims.  466 A.2d 1336, 1337-38 (Pa. 1983).  The court concluded that declaratory judgment was inappropriate because "the declaratory judgment procedure may not be used to prejudge issues that are committed for initial resolution to an administrative forum."  Id. at 1341.  The court thus

21

declined to provide relief in the form of a declaratory judgment and found that plaintiff should obtain a determination of its obligations with the prescribed administrative agency.  Id.

Here, as discussed above, Plaintiff was required to follow the administrative procedures outlined in Section 11-1131 of the Public School Code.  Specifically, as a professional employee, Plaintiff's remedy to challenge her suspension and/or termination was to appeal to the Secretary of Education.   Because the proceeding to challenge her suspension and/or termination was "within the exclusive jurisdiction of a tribunal other than a court," Plaintiff may not use a declaratory judgment to judge issues that were committed to an administrative forum.  Also, as discussed in Frank Brisco Co., Plaintiff here must pursue the avenues of relief set out by the appropriate administrative agency.   Therefore, Plaintiff's claim under the Pennsylvania Declaratory Judgment Act is dismissed.

Alternatively, the Federal Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Third Circuit has set forth the following factors to consider when entertaining a claim under the Declaratory Judgment Act: "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies."  Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1224 (3d Cir. 1989).

Here, as stated above, Plaintiff requests a declaratory judgment that (1) her termination and/or suspension is void; (2) the removal of her replacement; (3) and for her reinstatement.  As

required by the Federal Declaratory Judgment Act, an "actual controversy" exists between

Plaintiff and Defendants as to the validity of her de facto termination.  Regarding her

reinstatement and the removal of her replacement, the Court is unable to determine at this stage

of the litigation whether reinstatement is a feasible remedy.  See Robinson v. Blank, No.

11Civ.2480(PAC)(DF), 2013 WL 2156040, at *12 (S.D.N.Y. May 20, 2013) (stating that the

viability of a declaratory judgment for reinstatement requires a showing that reinstatement is

feasible).  Whether Plaintiff's suspension and/or termination is void, as well as whether or not

reinstatement is appropriate will depend on the outcome of Plaintiff's constitutional claims.  This

Court will then look to the factors outlined by the Third Circuit to determine whether a

declaratory judgment is an appropriate remedy.  For these reasons, the Court will not dismiss

Plaintiff's declaratory judgment claim under the Federal Declaratory Judgment Act.

### G.  Violation of Local Agency Law and Public School Code (Count Eight) Will Be Dismissed

In Count Eight, Plaintiff brings a claim for violation of Local Agency Law and the Public

School Code.  Neither the Public School Code nor Local Agency Law provide for private causes

of action.  See Kohn, 817 F. Supp. 2d at 514 (citing Coreia v. Schuylkill Cnty. Area Vocational-

Technical Sch. Auth., No. 04-2425, 2006 WL 1310879, at *11 (M.D. Pa. May 11, 2006)

(Pennsylvania School Code has no provision allowing a private cause of action for damages)

(citing Lindsay v. Thomas, 565 A.2d 122, 123-24 (Pa. 1983); Augustine v. Turkeyfoot Valley

Area Sch. Dist., 9 Pa. D. & C. 3d 147, 179 n.14 (Somerset County Common Pleas Ct. 1977) (the

local Agency Law does not provide for money damages))).  The Court will therefore dismiss this

claim.

**H. Qualified Immunity**

Defendants argue that Counts One, Two, and Three should be dismissed against the Superintendent and the individual School Board members on the basis of qualified immunity. (Doc. No. 10 at 41-45.)  Qualified immunity protects "all but the plainly incompetent [executive officers] or those who knowingly violate the law." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011).  In resolving claims of qualified immunity, a court must decide:  1) whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right, and 2) whether that right was clearly established at the time of the defendant's misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001).  The state of the law must give the defendants fair warning that their actions were unconstitutional. Hope v. Peltzer, 536 U.S. 730, 739 (2002).

As explained supra, Plaintiff has alleged in the Complaint sufficient facts to establish a violation of due process.  This is a constitutional violation.  The question therefore becomes whether Plaintiff's right not to be subjected to this violation was clearly established at the time of the Superintendent and the individual School Board members' misconduct.  As noted, the Public School Code requires that an employee be furnished with "a detailed written statement of the charges upon which his or her proposed dismissal is based" prior to a hearing and that such hearing "shall not be sooner than ten (10) days nor later than fifteen (15) days after such written notice."  24 P.S. § 11-1127.  These requirements are clearly spelled out in the Public School Code.  As a result, it was clearly established that Plaintiff, as a principal, enjoys a constitutional right to due process before being suspended indefinitely or terminated, and that these rights were clearly established at the time of their violation.  Accordingly, based upon the allegations in the Complaint, both prongs of the qualified immunity test are met, and Defendants are not entitled to the benefits of qualified immunity at this state of the litigation.

## I.  Defendant Watkins May Not Be Sued in His Official Capacity

Plaintiff alleges all eight claims against Defendant Watkins in both his individual and official capacity as Financial Receiver for the School District.  (Doc. No. 8 at ¶ 7.)  Defendant Watkins moves to dismiss the claims against him on the basis that he is protected from suit in his official capacity by sovereign immunity and from suit in his individual capacity by the Public School Code.[12]

Under the Eleventh Amendment, states and their entities or instrumentalities are immune from suit in federal courts.  P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993).  A suit against a state employee in his official capacity is "in all respects other than name[] to be treated as a suit against the [state]."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Eleventh Amendment immunity is an affirmative defense and must be shown by the party seeking to assert the benefit of immunity.  See Christy v. Pa. Tpk. Comm'n., 54 F.3d 1140, 1144 (3d Cir. 1995).  The Commonwealth of Pennsylvania has not waived sovereign immunity except in limited circumstances.  1 Pa.C.S. § 2310; 42 Pa.C.S. § 8521.

Here, Defendant Watkins was appointed Financial Receiver for the School District by the Pennsylvania Secretary of Education, in accordance with 24 P.S. § 6-671-A.  The Court of Common Pleas of Delaware confirmed his appointment.  (Doc. No. 21 at 8.)  As Financial Receiver, Defendant Watkins is an employee of the Commonwealth of Pennsylvania.  (Id.)  A Financial Receiver is prohibited from seeking or holding a position as an employee or an elected or appointed official of the School District.  24 P.S. § 6-671-A(c)(3)(i).  As an employee of the Commonwealth of Pennsylvania, Defendant Watkins is a state official.  Accordingly, a suit

---

[12] Plaintiff did not file a Response to Defendant Watkins' Motion to Dismiss, nor did she address the Motion in her Response to the other Defendants' Motion to Dismiss.  For this reason alone, the Court could grant Defendant Watkins' Motion to Dismiss.  See E.D. Pa. Loc. R. Civ. P. 7.1(c).

against him is to be treated as a suit against the state.  Because states are immune from suit pursuant to the Eleventh Amendment, Defendant Watkins is shielded from being sued in his official capacity by sovereign immunity.

Plaintiff's claim for violation of due process, however, may proceed against Defendant Watkins in his individual capacity.  Plaintiff has alleged facts sufficient to establish that Defendant Watkins was involved in Plaintiff's suspension and the violation of her due process rights.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (stating that personal liability  may attach to government officials based on actions taken under color of state law that caused the deprivation of a federal right).  As noted, on January 16, 2014, in his position as Financial Receiver, Defendant Watkins approved a resolution of the School Board affirming Plaintiff's suspension.  Construing the facts in the light most favorable to Plaintiff, Defendant Watkins' involvement on the School Board and the approval of this resolution is sufficient to establish a claim for violation of due process against him

**V.      CONCLUSION**

For the forgoing reasons, Defendants Chester Upland School District, et al.'s Motion to Dismiss will be granted in part and denied in part.  Defendant Watkin's Motion to Dismiss will also be granted in part and dismissed in part.  Plaintiff's claims for violation of due process as set forth in Counts One and Two will proceed against all Defendants.  Plaintiff's stigma-plus claim will be dismissed against all Defendants.  Plaintiff's claim pursuant to the Federal Declaratory Judgment Act will proceed against all Defendants.  Plaintiff's claims for breach of contract, promissory estoppel, mandamus, and violation of Local Agency Law and the Public School Code will be dismissed against all Defendants.  An appropriate Order follows.